RATTAN DEV S. DHALIWAL (SBN 177318)
MICHAEL J. KOEPNICK (SBN 286605)
DHALIWAL LAW GROUP, INC.
2005 De La Cruz Boulevard, Suite 185
Santa Clara, CA  95050
Telephone: (408) 988-7722
Facsimile: (408) 988-3345

Attorneys for Plaintiff, Chetan Utterkar.

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | | |
|---|---|---|
| CHETAN UTTERKAR, | ) | Case No.: |
| | ) | |
| Plaintiff, | ) | |
| | ) | **COMPLAINT FOR BREACH OF** |
| vs. | ) | **CONTRACT AND FRAUD** |
| | ) | |
| EBIX, INC.; SUDHIR BAJAJ; | ) | |
| and DOES 1-10, inclusive. | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff CHETAN UTTERKAR, by way of Complaint against Defendants EBIX, INC. and SUDHIR BAJAJ, allege the following:

**JURISDICTIONAL ALLEGATIONS**

1.   Plaintiff CHETAN UTTERKAR (hereinafter the "PLAINTIFF") is an individual residing in Santa Clara County, California, and was a five percent (5%) shareholder of PlanetSoft, Inc., a corporation that was acquired (bought out) by Defendant EBIX, INC. in June of 2012.

2.   Defendant EBIX, INC. (hereinafter ''EBIX'') is a corporation organized under the laws of the State of Delaware, headquartered in Atlanta, Georgia, and doing business in California.

3.   Defendant SUDHIR BAJAJ (hereinafter "BAJAJ") is an individual currently residing in India, and was formerly the President of PlanetSoft, Inc., a California based corporation that was acquired by EBIX.

4.   PLAINTIFF does not know the true names or capacities of the Defendants sued herein as DOES 1-10, inclusive, and will amend this complaint to allege same as soon as ascertained.

5.   The amount in controversy between the parties is in excess of $75,000.00.

6.   Jurisdiction is based on diversity of citizenship pursuant to 29 U.S.C. § 1332.

**GENERAL ALLEGATIONS**

7.   PLAINTIFF repeats, restates and realleges the allegations set forth above.

8.   On or about April 3, 1999, the PLAINTIFF and BAJAJ (as President of PlanetSoft) signed a Memorandum of Understanding (hereinafter "MOU"). A true and correct copy of the Memorandum of Understanding is attached hereto as **Exhibit 1.**

9.   The MOU stated that it was a summary of the terms and conditions of a partnership between PLAINTIFF and BAJAJ, and it involved the PLAINTIFF working to develop new business for PlanetSoft, and investing $25,000.00 towards "the equity of PlanetSoft."

10.   Further, the MOU provided that PLAINTIFF would initially work 50% time (part-time) for PlanetSoft to develop new business; however, after three months it would become full-time, which within three months it did.

11.   The MOU stated that in exchange for the investment of $25,000.00 and one person's full-time focus on PlanetSoft business (either PLAINTIFF or his wife, Marceline Uttarkar),

"Chetan (PLAINTIFF) will receive 5% of equity in PlanetSoft."
See **Exhibit 1**.

12. Also, PLAINTIFF was given the option to invest
$50,000.00 more to acquire an additional 2.5% interest in
PlanetSoft. PLAINTIFF declined to do so.

13. PLAINTIFF worked full-time for BAJAJ and PlanetSoft,
Inc. from on or about September 2000 until in or about July
2001.

14. PLAINTIFF paid the $25,000.00 initial investment, and
also incurred thousands of dollars in business expenses
(including travel, supplies, etc.) that were never reimbursed by
PlanetSoft.

15. PLAINTIFF's wife, Marceline Uttarkar, worked full-time
for BAJAJ and PlanetSoft from June 1999 until in or about
February 2004.

16. PLAINTIFF stopped working for PlanetSoft, Inc. because
his wages were cut by approximately 66%. BAJAJ told PLAINTIFF
and the other partners that cuts were necessary for the
business.

17. Despite the cuts, PLAINTIFF's wife continued to work
for PlanetSoft, Inc. until approximately February of 2004.

18. PLAINTIFF and his wife together invested over
$25,000.00 in PlanetSoft, taking into consideration the initial
investment and expenses that were never reimbursed by
PlanetSoft.

19. The MOU stated as a final point that all equity was
vested as long as PLAINTIFF was "participating in the growth and
development of PlanetSoft business on a full time basis." See
**Exhibit 1**.

20. If participation by PLAINTIFF was not full-time, the
equity was to be "bought back prorated on the basis of valuing
the company at twice the current revenue." See **Exhibit 1**.

21.  The equity was never bought back by PlanetSoft, despite promises by BAJAJ that it would be.

22.  The essential terms of the MOU are sufficiently clear and certain.

23.  A final written contract incorporating the terms of the MOU was never signed, despite promises by BAJAJ that this would be done.

24.  PLAINTIFF fulfilled his obligations to PlanetSoft, including monetary investment and full-time "participation" in working to grow the business.

25.  In or about June of 2012, PlanetSoft was purchased by Defendant EBIX for a reported $40,000,000.00. A true and correct copy of Yahoo! Finance article detailing the acquisition is attached hereto as **Exhibit 2**.

26.  EBIX reportedly acquired all of the outstanding capital stock of PlanetSoft for $35,000,000.00 in cash at closing, and $5,000,000.00 payable in the form of 297,265 shares of the common stock of EBIX issued at closing.

27.  The deal also reportedly involved earn-out cash payments to PlanetSoft shareholders based on specific revenue numbers achieved within 24 months following closing.

28.  It has been approximately 23 months since EBIX purchased PlanetSoft.

29.  To date, the PLAINTIFF has received no compensation from EBIX or BAJAJ, despite being a 5% equity owner of PlanetSoft, Inc.

30.  PLAINTIFF, by and through Counsel, sent correspondence to EBIX on or about February 27, 2013; March 18, 2013; April 5, 2013; September 12, 2013; and February 5, 2014 to detail the PLAINTIFF's interest in PlanetSoft, Inc. and the payout he was rightfully owed following the acquisition by EBIX. True and

correct copies of letters sent to EBIX are attached hereto as **Exhibit 3.**

31.   PLAINTIFF, by and through Counsel, sent correspondence to BAJAJ on or about February 27, 2013 and April 5, 2013 to remind him of the PLAINTIFF's interest in PlanetSoft, Inc. and the payout he rightfully had coming following the sale to EBIX. At the time, BAJAJ was living in Massachusetts. True and correct copies of letters sent to BAJAJ are attached hereto as **Exhibit 4.**

32.   To date, PLAINTIFF has received no response or correspondence from EBIX or BAJAJ regarding the money owed to PLAINTIFF stemming from his 5% equity ownership following the EBIX acquisition of PlanetSoft, Inc.

<u>**CLAIMS FOR RELIEF**</u>

**COUNT ONE - BREACH OF CONTRACT**

(As to EBIX and DOES 1-10, inclusive)

33.   PLAINTIFF realleges the allegations set forth in Paragraphs 1 through 28 of this Complaint as if fully set forth herein.

34.   On or about April 3, 1999, PLAINTIFF and BAJAJ (on behalf of PlanetSoft, Inc.) made and executed the MOU.

35.   The MOU constitutes a contract between the parties because the language and material terms and conditions are clear and concise, and a contrary intention not to be bound by its terms does not exist.

36.   The MOU stated that PLAINTIFF would work for PlanetSoft, Inc. to develop new business; PLAINTIFF was to start out working part-time, and within three months, either he or his wife, Marceline Uttarkar, would work full-time for PlanetSoft, Inc.

37.   The MOU also required a $25,000.00 investment by PLAINTIFF, which was paid, along with a great amount of expenses that PLAINTIFF and his wife incurred and have never been reimbursed for.

38.   PLAINTIFF was to receive a base salary of $40,000.00 per year (prorated monthly) to start, and with satisfactory performance, the salary was to increase to $80,000.00 per year.

39.   PLAINTIFF did start at $40,000.00 per year, and then after a short time period was given the raise to $80,000.00, as was his wife.

40.   In exchange for the investment and work efforts of PLAINTIFF and his wife, PLAINTIFF received 5% of the equity in PlanetSoft, Inc., pursuant to the MOU.

41.   The MOU also provided the PLAINTIFF the option to invest another $50,000.00 in exchange for another 2.5% of the equity of PlanetSoft, Inc., but PLAINTIFF declined this option.

42.   Lastly, the MOU provided that all equity was vested as long as PLAINTIFF was "participating in the growth and development of PlanetSoft business on a full time basis."

43.   If participation by PLAINTIFF was not full-time, the equity was to be "bought back prorated on the basis of valuing the company at twice the current revenue."

44.   When PLAINTIFF and his wife had both ceased working for PlanetSoft, Inc. in or about February of 2004, PlanetSoft promised to (by and through BAJAJ) but never bought back the 5% equity ownership that PLAINTIFF rightfully owned.

45.   At the time PlanetSoft was purchased by EBIX in June of 2012, PLAINTIFF had not been paid by PlanetSoft, Inc., and thus he still owned 5% of the equity of the PlanetSoft corporation.

46.   To this date, PLAINTIFF has not been paid by EBIX, despite numerous demand letters, as mentioned above.

47.   Through this refusal by EBIX to remit payment to PLAINTIFF to compensate him for his 5% ownership of PlanetSoft, Inc., EBIX has breached the terms of the MOU.

48.   PLAINTIFF performed all duties required in the MOU.

49.   The MOU should properly be treated as a written contract between PLAINTIFF and PlanetSoft, Inc. because the language and material terms and conditions are clear and concise, and a contrary intention not to be bound by its terms does not exist.

50.   By acquiring PlanetSoft, Inc., EBIX became the successor in interest to the obligations of PlanetSoft, Inc.

51.   Even if the contract between the PLAINTIFF and PlanetSoft was not disclosed to EBIX at the time EBIX acquired PlanetSoft, sufficient notice has since been given by PLAINTIFF, and EBIX has had sufficient time to investigate the matter.

52.   As a result of Defendant EBIX's breach of this contract, PLAINTIFF has suffered damages in the amount of $2,000,000.00, or the value of his 5% ownership of PlanetSoft, Inc. at the time of sale of PlanetSoft to EBIX (sales price was $40M).

**COUNT TWO - FRAUD**

(As to BAJAJ and DOES 1-10, inclusive)

53.   Plaintiffs reallege the allegations and facts set forth above.

54.   Defendant BAJAJ, as President of PlanetSoft, Inc., entered into an MOU with PLAINTIFF on or about April 3, 1999.

55.   BAJAJ promised PLAINTIFF that the terms and conditions of the MOU, including the 5% equity ownership, would be finalized into a contract "at the end of 3 months to mutual consent of both parties."

Complaint                    7
(Case No.              )

56.   PLAINTIFF relied on this representation, and performed his part of the MOU by investing the requisite amount, along with vast amounts of expenses that have not been reimbursed, and working for PlanetSoft part-time in the beginning, and then full-time within approximately 2-3 months.

57.   PLAINTIFF's wife, Marceline Uttarkar, also worked for PlanetSoft, Inc. in a full-time capacity.

58.   BAJAJ never formalized the MOU into a final contract; however, as alleged above, the language and material terms and conditions in the MOU are clear and concise, and a contrary intention not to be bound by its terms does not exist, thus the MOU should be treated as a contract.

59.   PlanetSoft, Inc. cut the salaries of PLAINTIFF and his wife by approximately 66% in or about mid-2001, despite their full-time work.

60.   PLAINTIFF continued to work for PlanetSoft until July of 2001, and his wife continued until February of 2004; thereafter, BAJAJ stated PlanetSoft would buy back the 5% equity ownership from PLAINTIFF.

61.   PlanetSoft, Inc. never purchased the 5% equity back from the PLAINTIFF, despite multiple assertions by BAJAJ that it would.

62.   PLAINTIFF alleges that BAJAJ made a promise to pay him for his equity, a material matter, without any intention of performing it.

63.   BAJAJ then sold PlanetSoft, Inc. to EBIX in 2012 for $40,000,000, and intentionally did not disclose PLAINTIFF's ownership.

64.   As a result, BAJAJ would stand to profit more because PLAINTIFF's 5% ownership equity would not be known to EBIX, and BAJAJ would stand to take a larger share of the purchase price.

65. The PLAINTIFF relied on the representations made by BAJAJ and it has resulted in monetary damages.

66. As a result of each of BAJAJ's latent misrepresentations and fraud in disclosing PLAINTIFF's ownership interest to EBIX, the PLAINTIFF has suffered damages currently totaling approximately $2,000,000.00.

WHEREFORE, PLAINTIFF prays for judgment against Defendants in the amount of $2,000,000.00, for damages to satisfy their obligation to the PLAINTIFF, as former 5% shareholder of PlanetSoft, Inc., together with attorney fees, costs of suit, interest, and further relief as this court deems just and proper.

Dated: May 14, 2014

By:   /s/ Michael J. Koepnick
MICHAEL J. KOEPNICK,
Attorney for Plaintiff