UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | | |
|---|---|---|
| CHETAN UTTERKAR, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No.: 5:14-CV-02250-LHK |
| EBIX, INC.; SUDHIR BAJAJ; and DOES 1 – 10, inclusive, | ) ) ) | ORDER GRANTING DEFENDANT'S MOTION TO DISMISS |
| Defendants. | ) ) ) | |
| | ) | |

Plaintiff Chetan Utterkar ("Plaintiff") brings this action for breach of contract against Defendants Ebix, Inc., Sudhir Bajaj, and Does 1 through 10 ("Defendants"). ECF No. 1 ("Compl.") Plaintiff further alleges fraud against Sudhir Bajaj and Does 1 through 10. Before the Court is Defendant Ebix, Inc.'s motion to dismiss for improper venue or to transfer venue, ECF No. 15 ("Mot. 1"), and motion to dismiss for failure to state a claim, ECF No. 16 ("Mot. 2"). Plaintiff opposes the motions. ECF No. 18 ("Opp. 1"), ECF No. 19 ("Opp. 2"). Defendant Ebix, Inc. ("Ebix") replied to the oppositions. ECF No. 20 ("Reply 1"), ECF No. 21 ("Reply 2"). Ebix also requested judicial notice of a record from the Delaware Division of Corporations in support of its motions. ECF No. 23 ("RJN"). Having considered the parties' submissions and the relevant law, the Court hereby GRANTS Defendant Ebix's motion to dismiss the breach of contract claim

United States District Court
For the Northern District of California

without prejudice, and DENIES Defendant Ebix's motion to dismiss or transfer for improper venue.

## I.    BACKGROUND

On or around April 3, 1999, Plaintiff and Bajaj, the President of PlanetSoft, Inc. ("PlanetSoft"), signed a Memorandum of Understanding ("MOU") summarizing the terms and conditions of Plaintiff's partnership with PlanetSoft.  Compl. ¶¶ 7–9.  The MOU required that Plaintiff would work half-time for PlanetSoft for three months and then either Plaintiff or his spouse, Marceline Utterkar, would work full-time thereafter on "mutual consent of both parties". *Id.* ¶ 10, Ex. 1.  The MOU detailed that Plaintiff would be working half-time "to develop new business in PlanetSoft's area of specialty in the New York and New Jersey areas" at a salary of $40,000.00/yr. prorated monthly.  *Id.* Ex. 1.  That salary would increase to $80,000.00/yr. for full-time work upon "mutual agreement" and "satisfactory full time focus."  *Id.*  In addition, the MOU required that Plaintiff would "invest $25,000.00 towards the equity of PlanetSoft."  *Id.*  The MOU provided that Plaintiff would receive 5 percent of the equity in PlanetSoft in exchange for one person's full-time work and the $25,000.00 investment.  *Id.* ¶ 11, Ex. 1.  Plaintiff was further given the option to invest $50,000.00 more for an additional 2.5 percent interest in PlanetSoft, but Plaintiff did not do so.  *Id.* ¶ 12. Finally, the MOU noted that all equity would be vested as long as Plaintiff was "operationally participating in the growth and development of PlanetSoft business on a full time basis."  *Id.* ¶ 19, Ex. 1.  According to the MOU, if participation by Plaintiff was no longer full time, "equity will be bought back prorated on the basis of valuing the company at twice the current revenue."  *Id.* ¶ 20, Ex. 1.

The MOU was written on PlanetSoft letterhead.  *Id.* Ex. 1.  The MOU was signed by Defendant Bajaj and by Plaintiff.  *Id.*  However, the signed MOU was faxed to Plaintiff from PlanetSoft's office and lists Bajaj's PlanetSoft email address.  *Id.*  Plaintiff and Bajaj never signed a final written contract incorporating the terms of the MOU, despite promises by Bajaj that it would be done.  *Id.* ¶ 23.  Ebix was not a party to the MOU.  Mot. 1 at 3.

Plaintiff paid the $25,000.00 initial investment to PlanetSoft.  *Id.* ¶ 14.  Plaintiff's spouse, Marceline Utterkar, worked full-time at PlanetSoft from June 1999 until about February 2004.  *Id.*

2

United States District Court
For the Northern District of California

¶ 15. Plaintiff worked full-time at PlanetSoft from September 2000 until about July 2001, at which point he ceased working at PlanetSoft due to 66 percent wage cuts. *Id.* ¶¶ 13, 16. In the "several years" after Marceline Uttekar ceased working full time at PlanetSoft, Defendant Bajaj promised the equity would be bought back by PlanetSoft. *Id.* ¶ 21. Neither Defendant Bajaj or PlanetSoft fulfilled those promises. *Id.* Plaintiff alleges that around June of 2012, Ebix purchased all of PlanetSoft's stock for approximately $35 million in cash and $5 million in Ebix shares. Compl. ¶ 25, Ex. 2; Mot. 1 at 3. On Yahoo! Finance, this transaction was reported as an "acquisition" of PlanetSoft by Ebix. Compl. ¶25, Ex. 2. Following the sale, Plaintiff contacted Ebix and Bajaj multiple times through counsel requesting $2 million for his 5 percent interest in PlanetSoft. Compl. ¶¶ 30–31, Ex. 3. Following these requests, Plaintiff did not receive any compensation for his 5 percent interest in PlanetSoft. *Id.* ¶ 32.

Plaintiff resides in Santa Clara County, California. *Id.* ¶ 1. Ebix is a corporation incorporated in Delaware, headquartered in Atlanta, Georgia, and does significant business in California. *Id.* ¶ 2. Bajaj resides in India, and was formerly the President of PlanetSoft, Inc., a California based corporation. *Id.* ¶ 3, Ex. 2. PlanetSoft Holdings, Inc. was incorporated in Delaware on September 28, 2004. RJN Ex. 2.[1]

Plaintiff alleges that Defendants Ebix, Bajaj, and Does 1 through 10 breached the MOU with Plaintiff. *Id.* ¶¶ 33–52. Plaintiff alleges that the MOU is a valid contract between Plaintiff and PlanetSoft, with clear and concise material terms and conditions, and without any contrary intention to not be bound by its terms. *Id.* ¶¶ 34–35, 49. Plaintiff alleges he fulfilled his

_____

[1] A district court may consider facts outside the pleadings in ruling on a Rule 12(b)(3) motion. *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1137 (9th Cir. 2004). In addition, a court may take judicial notice of documents referenced in the complaint, as well as matters in the public record, without converting a motion to dismiss into one for summary judgment. *See Lee v. City of L.A.*, 250 F.3d 668, 688–89 (9th Cir. 2001). A matter may be judicially noticed if it is either "generally known within the territorial jurisdiction of the trial court" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Public records and government documents drawn from reliable sources on the internet may be judicially noticed. *Eidson v. Medtronic, Inc.*, 981 F. Supp. 2d 868, 879 (N.D. Cal. 2013). Defendant requests that the Court take judicial notice of information regarding the incorporation of PlanetSoft Holdings, Inc. in the State of Delaware, as taken from the Delaware Division of Corporations' website, a state-run website. RJN. Plaintiff has not filed an opposition to this request. In accordance with the principles discussed above, the Court GRANTS Defendant's Request for Judicial Notice.

3

obligations under the MOU, and received a 5 percent interest in PlanetSoft, but that this interest was never bought back, despite promises by Bajaj to buy back the interest. *Id.* ¶¶ 36–39, 40, 44, 48. Plaintiff contends that around June of 2012, Ebix bought not only the shares of PlanetSoft, but also PlanetSoft itself, and that Ebix therefore is the successor-in-interest to PlanetSoft and liable for any breach of the MOU. *Id.* ¶¶ 25, 28, 30, 50. Plaintiff pleads that Ebix has breached the MOU by refusing "to compensate him for his 5% ownership of PlanetSoft." *Id.* ¶ 47. Plaintiff further alleges fraud against Defendants Bajaj and Does 1 through 10.[2] *Id.* ¶¶ 53–66.

## II.    LEGAL STANDARDS

### A.  Rule 12(b)(3)

Where a defendant moves to dismiss for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3), the plaintiff bears the burden of showing that venue is proper. *Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979). When considering a motion to dismiss pursuant to Rule 12(b)(3), a court need not accept the pleadings as true and may consider facts outside of the pleadings. *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1137 (9th Cir. 2004). However, the trial court must draw all reasonable inferences in favor of the non-moving party and resolve all factual conflicts in favor of the non-moving party. *Id.* at 1138. Pursuant to 28 U.S.C. § 1406(a), if the Court determines that venue is improper, the Court must either dismiss the action or, if it is in the interests of justice, transfer the case to a district or division in which it could have been brought. Whether to dismiss for improper venue, or alternatively to transfer venue to a proper court, is within the discretion of the district court. *See King v. Russell*, 963 F.2d 1301, 1304 (9th Cir. 1992).

### B.  Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint for failure to state a claim upon which relief can be granted. Such a motion tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). In considering

---

[2] Per the Court's September 30, 2014 Case Management Order, ECF No. 28, Plaintiff must serve Defendant Bajaj by October 31, 2014 or the Court will dismiss Defendant Bajaj from this action without prejudice.

Case No.: 5:14-CV-02250-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

whether the complaint is sufficient, the Court must accept as true all of the factual allegations contained in the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, the Court need not accept as true "allegations that contradict matters properly subject to judicial notice or by exhibit" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted). While a complaint need not allege detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (internal citation omitted).

### C.  Rule 9(b)

Claims sounding in fraud or mistake are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), which require that a plaintiff alleging fraud "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *see Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009). To satisfy the heightened standard under Rule 9(b), the allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). Thus, claims sounding in fraud must allege "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (per curiam) (internal quotation marks and citation omitted). A plaintiff must set forth what is false or misleading about a statement, and why it is false." *In re GlenFed, Inc. Secs. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc),

5

*superseded by statute on other grounds as stated in Marksman Partners, L.P. v. Chantal Pharm. Corp.*, 927 F. Supp. 1297, 1309 (C.D. Cal. 1996). However, "intent, knowledge, and other conditions of a person's mind" need not be stated with particularity, and "may be alleged generally." Fed. R. Civ. P. 9(b).

### D. Leave to Amend

If the court concludes that the complaint should be dismissed, it must then decide whether to grant leave to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 . . . [is] to facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks and citation omitted). Nonetheless, a district court may deny leave to amend a complaint due to "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *See Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

### III.    DISCUSSION

Plaintiff's only claim against Defendant Ebix is the breach of contract claim. Defendant Ebix seeks to dismiss Plaintiff's Complaint for the following reasons: (1) venue in the Northern District of California is improper; (2) the claim is time barred; (3) the contract is not enforceable; (4) the contract is not binding on Ebix; and (5) a necessary party has not been named. The Court GRANTS the motion to dismiss Plaintiff's breach of contract claim because Plaintiff's claim is time barred. The Court DENIES Defendant Ebix's motion to dismiss or transfer for improper venue. The Court does not reach Defendant's other grounds for dismissal.

United States District Court
For the Northern District of California

### A. Statute of Limitations

Defendant Ebix contends that Plaintiff's breach of contract claim is time barred under either the relevant California statute of limitations or the Delaware statute of limitations.    The Court addresses this claim below.

As a general matter, when a federal court sits in diversity, it must apply the forum state's law for the applicable statute of limitations. *Johnson v. Lucent Technologies Inc.*, 653 F.3d 1000, 1008 (9th Cir. 2011).  Under California law, the statute of limitations for breach of contract is four years.  Cal. Civ. Proc. Code § 337(1); *see also* Mot 2 at 9; Opp. 2 at 15.  Plaintiff concedes that the four year statute of limitations under California law applies to Plaintiff's breach of contract claim. *See* Opp. 1 at 15.

A threshold question is when the statutes of limitations period starts to run.  Under California law, "the limitations period, the period in which a plaintiff must bring suit or be barred, runs from the moment a claim accrues." *Aryeh v. Canon Bus. Solutions, Inc.*, 55 Cal. 4th 1185, 1191 (2013).  The "last element" accrual rule provides that absent any equitable exception, a claim accrues upon "'the occurrence of the last element essential to the cause of action.'" *Id.* (quoting *Neel v. Magana, Olney, Levy, Cathcart & Gelfand*, 6 Cal. 3d 176, 187 (1971)).  A breach of contract claim generally accrues at the time of the breach. *Mortkowitz v. Texaco, Inc.*, 842 F. Supp. 1232, 1236 (N.D. Cal. 1994) (citing *Donahue v. United Artists Corp.*, 83 Cal. Rptr. 131 (Ct. App. 1969)).

Here, Plaintiff's breach of contract claim accrued in February 2004 when PlanetSoft failed to perform following the occurrence of a condition precedent.[3]  Under the terms of the MOU, "[i]n the event that participation is not on a full time basis, equity will be bought back prorated on the basis of valuing the company at twice the current revenue."  Compl. Exh. 1; Compl. ¶ 20.  Plaintiff

---

[3] Defendant Ebix contends that Plaintiff's breach of contract claim is time barred whether PlanetSoft's duty to perform was triggered by Plaintiff's decision to cease his full time participation or by Marceline Uttekar's decision to cease her full time participation.  Mot. 1 at 11. In light of Plaintiff's argument that the MOU called for either Plaintiff's or Marceline Uttekar's full time participation, the Court gives Plaintiff the benefit of the doubt in assuming that the breach of contract claim accrued in February 2004 when Marceline Uttekar ceased her full time participation, rather than in July 2001 when Plaintiff ceased his full time participation in PlanetSoft's business. *See* Compl. Exh. 1.  Moreover, Ebix does not contest that Marceline Uttekar's full time participation satisfied Plaintiff's obligations under the MOU.

alleges that he "worked full-time for BAJAJ and PlanetSoft, Inc. . . . until in or about July 2001." Compl. ¶ 13.  Plaintiff's spouse worked full-time for PlanetSoft "until in or about February 2004." *Id*. ¶ 15.  Therefore, by February 2004, "participation [was] not on a full time basis" and PlanetSoft's duty to purchase Plaintiff's 5 percent equity was triggered under the MOU.  Plaintiff concedes that February 2004 is the date upon which Plaintiff's breach of contract claim accrued. Plaintiff filed this action on May 15, 2014, more than *ten years* after his claim accrued.  Plaintiff's delay means that by the time Plaintiff filed suit, the period of limitations under Cal. Civ. Code. § 337(1) had run by more than six years.  Consequently, the Court concludes Plaintiff's breach of contract claim is time barred.

### 1. Delayed Discovery Rule

The Court now turns to the question of whether the statute of limitations was tolled or any defendant is equitably estopped from raising the statute of limitations defense.  In his opposition, Plaintiff argues that he "did not suspect that he was being 'wronged,'" because even though he knew his full time participation in PlanetSoft had ended and he was entitled to have his equity purchased back from him, Defendant Bajaj made "promises over the next several years . . . that compensation was forthcoming."  Opp'n at 15.  Plaintiff further argues that he only realized he was "wronged by PlanetSoft and defrauded by B[ajaj]" when Plaintiff discovered Ebix purchased PlanetSoft in June 2012. Opp'n at 15–16.  The Court assumes from Plaintiff's briefing that he is raising both the delayed discovery rule and equitable estoppel.  The Court addresses each in turn.

First, "[i]n California, the discovery rule postpones accrual of a claim until 'the plaintiff discovers, or has reason to discover, the cause of action.'" *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1024 (9th Cir. 2008) (quoting *Norgart v. Upjohn Co.*, 981 P.2d 79, 88 (Cal. 1999)). "The discovery rule is based on the notion that statutes of limitations are intended to run against those who fail to exercise reasonable care in the protection and enforcement of their rights; therefore, those statutes should not be interpreted so as to bar a victim of wrongful conduct from asserting a cause of action before he [or she] could reasonably be expected to discover its existence."  *E-Fab, Inc. v. Accountants, Inc. Servs.*, 64 Cal. Rptr. 3d 9, 16 (Ct. App. 2007) (internal quotation marks omitted).  "A plaintiff whose complaint shows on its face that [his or her] claim

United States District Court
For the Northern District of California

1    would be barred without the benefit of the discovery rule must specifically plead facts to show (1)

2    the time and manner of discovery and (2) the inability to have made earlier discovery despite

3    reasonable diligence. *Id.* at 17 (internal quotations and citation omitted).

4           Here, Plaintiff has failed to plead facts showing ignorance of his injury at the time that it

5    occurred. To the contrary, Plaintiff has specifically pled his knowledge of Defendant Bajaj's

6    breach. Plaintiff alleges that he and his spouse ceased their full time participation in PlanetSoft's

7    business in February of 2004. Compl. ¶¶ 13, 15. Plaintiff further alleges that under the MOU,

8    PlanetSoft was obligated to buy back the 5 percent equity stake in PlanetSoft "prorated on the basis

9    of valuing the company at twice the current revenue." *Id.* ¶ 20. Moreover, Plaintiff alleges that

10   "[t]he equity was never bought back by PlanetSoft, despite promises by BAJAJ that it would be."

11   *Id.* ¶ 21. Plaintiff concedes, as he must, that he was fully aware of when his and his spouse's full

12   time participation in PlanetSoft's business ended, and that Plaintiff understood PlanetSoft's duty

13   was triggered at that time. Opp. at 2 at 15; Compl. ¶¶ 21–22. Plaintiff has pled his knowledge that

14   Plaintiff was owed money under the contract. *See* Compl. ¶ 41 ("When PLAINTIFF and his wife

15   had both ceased working for PlanetSoft, Inc. in or about February of 2004, PlanetSoft promised to

16   (by and through BAJAJ) but never bought back the 5% equity ownership that PLAINTIFF

17   rightfully owned."). Plaintiff has not pled any facts showing he was ignorant that PlanetSoft was in

18   breach of its contractual duties. Instead, Plaintiff's own allegations show that he was aware of the

19   alleged breach, but chose to sit on his rights under the MOU, apparently because of Defendant

20   Bajaj's alleged promises.

21          Plaintiff argues, however, that he did not realize Defendants breached the MOU until he

22   received nothing following Ebix's purchase of PlanetSoft shares. Opp. 2 at 16. Again, Plaintiff's

23   own allegations foreclose this argument. Plaintiff alleges that the "essential terms of the MOU are

24   sufficiently clear and certain." Compl. ¶ 22. Plaintiff also alleges that "[i]f participation by

25   PLAINTIFF was not full-time, the equity was to be 'bought back prorated on the basis of valuing

26   the company at twice the current revenue.'" *Id.* ¶ 20; *Id.* Exh. 1. Nowhere in the Complaint does

27   Plaintiff allege that Defendants' duty to perform was contingent upon a stock sale to a third party.

28   Instead, the "clear and certain" terms of the MOU stated that Defendants' duty to buy back

9

**United States District Court**
For the Northern District of California

1    Plaintiff's investment would be triggered if and when Plaintiff and his spouse ceased their full time

2    participation in PlanetSoft's business.

3          Moreover, even if Plaintiff did subjectively believe that Defendants' duty to perform was

4    not triggered in February 2004, the delayed discovery rule would still not apply to toll the statute of

5    limitations here.  Under the discovery rule, "[s]ubjective suspicion is not required. If a person

6    becomes aware of facts which would make a reasonably prudent person suspicious, he or she has a

7    duty to investigate further and is charged with knowledge of matters which would have been

8    revealed by such an investigation." *Mangini v. Aerojet-Gen. Corp.*, 230 Cal. App. 3d 1125, 1150

9    (Ct. App. 1991).  In light of Plaintiff's own allegations regarding the clarity of the contract terms,

10   Plaintiff's actual knowledge of when Plaintiff and his spouse ceased their full time participation in

11   PlanetSoft's business, and Plaintiff's actual knowledge that Defendants had not performed upon

12   the occurrence of the condition precedent, the Court concludes a reasonably prudent person would

13   have been suspicious that Defendant Bajaj and PlanetSoft had breached the agreement since

14   February 2004.  Plaintiff's breach of contract claim is time barred and the delayed discovery rule

15   does not apply to toll the statute of limitations.

16                        **2. Equitable Estoppel**

17          Plaintiff appears to argue that his claim should survive under an estoppel theory because of

18   "promises by Bajaj that [the equity would be bought back]."  Compl. ¶ 21.  Even if a claim is time

19   barred, "[a] defendant will be estopped to assert the statute of limitations if the defendant's

20   conduct, relied on by the plaintiff, has induced the plaintiff to postpone filing the action until after

21   the statute has run." *Mills v. Forestex Co.*, 108 Cal. App. 4th 625, 652 (Ct. App. 2003); *McMackin*

22   *v. Ehrheart*, 194 Cal. App. 4th 128, 140 (Ct. App. 2011).  However, such promises do not trigger

23   equitable estoppel unless they are "conditioned upon [] refraining from initiating litigation or

24   taking any action against [defendant] and that [the plaintiff does] in reliance thereon forbear from

25   such action." *Abramson v. Brownstein*, 897 F.2d 389, 393 (9th Cir. 1990) (quoting *Kurokawa v.*

26   *Blum*, 245 Cal. Rptr. 463, 471 (Cal. Ct. App. 1988)).  "For a defendant to be equitably estopped

27   from asserting a statute of limitations, the plaintiff must be 'directly prevented . . . from filing [a]

28

Case No.: 5:14-CV-02250-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

suit on time.'"  *Vaca v. Wachovia Mortg. Corp.*, 198 Cal. App. 4th 737, 746 (Ct. App. 2011) (quoting *Lentzy v. Centex Homes*, 73 P.3d 517, 534 (Cal. 2003)).

Here, Plaintiff has failed to allege sufficient facts to support an equitable estoppel claim. Plaintiff contends that Defendant Bajaj made promises that Plaintiff's equity would be bought back, but Plaintiff does not plead any reliance on Bajaj's alleged promises.  *See Mills*, 108 Cal. App. 4th at 652.  Moreover, Plaintiff does not allege that he intended to bring suit in 2004, or any time before 2008, when the statute of limitations had run.  He has therefore failed to plead sufficient facts to support a claim of equitable estoppel.  *See, e.g.*, *Battuello v. Battuello*, 64 Cal. App. 4th 842, 848 (Ct. App. 1998) (holding that plaintiff plausibly pled equitable estoppel where defendant "convinced [plaintiff] not to file a timely suit by telling [plaintiff] that [plaintiff] would receive the vineyard," during settlement negotiations).

Furthermore, Plaintiff has not adequately pled why Defendant Ebix would be equitably estopped from raising a statute of limitations defense based on Defendant Bajaj's alleged promises that occurred several years prior to Ebix's alleged acquisition of PlanetSoft.  Plaintiff contends that Ebix succeeded to PlanetSoft's liabilities by "purchasing" PlanetSoft.  Compl. ¶¶ 25, 26. Plaintiff's particular theory of merger is contrary to the properly judicially noticed documents submitted by Defendant Ebix.  The very case Plaintiff cites, *Phillips v. Cooper Labs.*, 215 Cal. App. 3d 1648, 1660 (Ct. App. 1989), concludes that where the second entity remains a separate, independent corporate entity and the first entity merely purchases stock, there is no merger.  Here, PlanetSoft is a separate, independent corporate entity in good standing in the state of Delaware. *See* RJN Exh. 2.  Plaintiff even alleges that Ebix only purchased Planetsoft's capital and common stock.  Compl. ¶ 26.  In light of Plaintiff's own allegations and the public records submitted by Defendant Ebix, the Court declines to accept as true Plaintiff's conclusory allegations that Ebix's stock purchases constituted an "acquisition" of PlanetSoft.  *See In re Gilead Scis. Secs. Litig.*, 536 F.3d at 1055 (holding that the Court need not accept as true "allegations that contradict matters properly subject to judicial notice or by exhibit").  The Court notes, however, that Plaintiff may be able to plead alternative theories of merger.  *See, e.g.*, *Marks v. Minn. Mining & Mfg. Co.*, 187 Cal. App. 3d 1429, 1437 (Ct. App. 1986) (listing exceptions to general rule regarding asset purchases).

11

1         Accordingly, the Court dismisses Plaintiff's breach of contract claim without prejudice, as

2  amendment would not necessarily be futile.  *See Leadsinger*, 512 F.3d at 532.  While Plaintiff's

3  breach of contract claim is time barred and not subject to the delayed discovery rule, Plaintiff may

4  be able to plead that Defendants should be equitably estopped from asserting the statute of

5  limitations defense.

6        **B.  Venue**

7         Defendant Ebix argues that Plaintiff's claims are subject to a forum selection clause and

8  should therefore be dismissed, or, in the alternative, transferred to the United States District Court

9  for the District of Delaware. The Court addresses this contention below.

10         As a general matter, forum selection clauses "are prima facie valid and should be enforced

11  unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances."

12  *M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 10 (1972).  Forum selection clauses may be

13  applied to non-parties where "the alleged conduct of the non-parties is so closely related to the

14  contractual relationship" that the forum selection clause applies.  *Manetti-Farrow, Inc. v. Gucci*

15  *Am., Inc.*, 858 F.2d 509, 514 (9th Cir. 1988); *see also Manila Indus., Inc. v. Ondova Co.*, 334 F.

16  App'x 821 (9th Cir. 2009) (applying forum selection clause to non-parties)

17         Here, Defendant Ebix contends that Plaintiff's breach of contract claim falls within the

18  scope of the Stock Purchase Agreement ("SPA") forum selection clause.  Ebix argues that

19  Plaintiff's claim to 5 percent of PlanetSoft's equity is functionally a claim that Plaintiff is entitled

20  to rights and benefits under the SPA.  The Court disagrees.  Plaintiff's breach of contract claim is

21  based on the MOU, an alleged agreement between Defendant Bajaj, PlanetSoft, and Plaintiff.

22  Defendant Ebix relies on a forum selection clause contained in the SPA, the agreement between

23  Ebix, Bajaj, PlanetSoft, and several stockholders.  Plaintiff correctly argues that his breach of

24  contract claim is based on an alleged breach of the MOU, to which Plaintiff, Bajaj, and PlanetSoft

25  are parties, and not a breach of the SPA.

26

27

28

Case No.: 5:14-CV-02250-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

**United States District Court**
For the Northern District of California

Contrary to Ebix's assertion, whether or not Plaintiff can allege a breach of contract under the MOU is not related to and does not depend on the SPA.[4]  Plaintiff does not allege that Ebix and PlanetSoft acted wrongfully in the SPA, or that he was unfairly excluded from the SPA.  Rather, Plaintiff alleges that Bajaj and PlanetSoft failed to perform under the MOU.  Ebix's alleged liability stems from its purchase of PlanetSoft and, according to Plaintiff, Ebix's assumption of PlanetSoft's liabilities.  *See* Compl. ¶¶ 24–26, 47 ("Through this refusal by EBIX to remit payment to PLAINTIFF to compensate him for his 5% ownership of PlanetSoft, Inc., EBIX has breached the terms of the MOU.").  Unlike in *Manetti-Farrow*, where the plaintiff alleged tort claims that related to the interpretation of the contract with the forum selection clause, Plaintiff's breach of contract claim for an entirely separate agreement is not a claim that "cannot be adjudicated without analyzing whether the parties were in compliance with the [SPA]."  *See* 858 F.2d at 154.

Defendant Ebix cites *Tolentino v. Mossman*, No. 207-1243, 2007 WL 4404447 (E.D. Cal. Dec. 13, 2007), in support of its argument that Plaintiff is bound by the forum selection clause of the SPA despite Plaintiff's non-party status.  However, whether a non-party may be bound by a forum selection clause is secondary to whether a non-party's claims fall within the scope of a forum selection clause, e.g., whether the claims "cannot be adjudicated without analyzing" the contract containing the forum selection clause.  *See Manetti-Farrow*, 858 F.2d at 514.  In *Tolentino*, the plaintiff alleged that the non-party defendants had acted in concert with the defendants that were parties to the contract containing the forum selection clause.  *Id.* at 7.  The *Tolentino* court found that the non-party defendants had entered into agreements with the party-defendants to help perform the party-defendant's obligations under the contract containing the forum selection clause.  *Id.*  It was the close relationship between the non-parties' conduct and the contract that required application of the forum selection clause.  *Id.*  In contrast, whether PlanetSoft, and by extension Ebix, breached the MOU does not require interpreting, applying, or even referring to the SPA.

---

[4] The Court also notes that Defendant Ebix concedes that interpreting the MOU does not require reference to the SPA.  In its motion to dismiss for failure to state a claim, Defendant Ebix argues that "the 1999 MOU is wholly unrelated to the 2012 transaction between Ebix and PlanetSoft holdings, Inc. and imparts no obligations on Ebix to make any payments to shareholders in connection with that transaction." Opp. 2 at 11.

13

United States District Court
For the Northern District of California

1      Accordingly, the Court DENIES Defendant Ebix's motion to dismiss or transfer for

2  improper venue based on the forum selection clause of the SPA.

3  **IV.      CONCLUSION**

4      For the reasons discussed herein, the Court GRANTS Defendant Ebix's motion to dismiss

5  Plaintiff's breach of contract claim without prejudice and DENIES Ebix's motion to dismiss or

6  transfer for improper venue.  Should Plaintiff elect to file an amended complaint curing the

7  deficiencies identified herein, Plaintiff shall do so within 21 days of the date of this Order.  Failure

8  to meet the 21 day deadline to file an amended complaint or failure to cure the deficiencies

9  identified in this Order will result in a dismissal with prejudice.  Plaintiff may not add new causes

10  of actions or parties without leave of the Court or stipulation of the parties pursuant to Federal Rule

11  of Civil Procedure 15.

12

13  **IT IS SO ORDERED.**

14

15  Dated: October 6, 2014

16                                        LUCY H. KOH
                                          United States District Judge

17

18

19

20

21

22

23

24

25

26

27

28

Case No.: 5:14-CV-02250-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS