United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CHETAN UTTERKAR,<br><br>            Plaintiff,<br><br>    v.<br><br>EBIX, INC., et al.,<br><br>            Defendants. | Case No.:14-CV-02250-LHK<br><br>**ORDER GRANTING MOTIONS TO DISMISS**<br><br>Re: Dkt. Nos. 44, 53 |

Plaintiff Chetan Utterkar ("Plaintiff") brings this action for breach of contract and fraud against Defendants Ebix, Inc., Sudhir Bajaj, and Does 1 through 10 (collectively, "Defendants"). Before the Court are Defendant Ebix, Inc.'s motion to dismiss and Defendant Bajaj's motion to dismiss. ECF Nos. 44, 53. Having considered the parties' submissions, the record in this case, and the relevant law, the Court hereby GRANTS Defendant Ebix's motion to dismiss and GRANTS Defendant Bajaj's motion to dismiss.

1

## I. BACKGROUND

### A. Factual Background

On or around April 3, 1999, Plaintiff and Bajaj, then President of PlanetSoft, Inc. ("PlanetSoft"), signed a Memorandum of Understanding ("MOU") summarizing the terms and conditions of Plaintiff's partnership with PlanetSoft. First Am. Comp. ("FAC"), ECF No. 33, ¶¶ 8–9. The MOU required that Plaintiff would work half-time for PlanetSoft for three months and then either Plaintiff or his spouse, Marceline Utterkar, would work full-time thereafter on "mutual consent of both parties." *Id.* ¶ 10, Ex. 1. The agreement would also "be finalized upon at [sic] the end of the 3 months." *Id.* The MOU detailed that Plaintiff would be working half-time "to develop new business in PlanetSoft's area of specialty in the New York and New Jersey areas" at a salary of $40,000.00/yr. prorated monthly. *Id.* Ex. 1. That salary would increase to $80,000.00/yr. for full-time work upon "mutual agreement" and "satisfactory full time focus." *Id.* In addition, the MOU required that Plaintiff would "invest $25,000.00 towards the equity of PlanetSoft." *Id.* The MOU provided that Plaintiff would receive 5 percent of the equity in PlanetSoft in exchange for one person's full-time work and the $25,000.00 investment. *Id.* ¶ 13, Ex. 1. Plaintiff was further given the option to invest $50,000.00 more for an additional 2.5 percent interest in PlanetSoft, but Plaintiff did not do so. *Id.* ¶ 14. Finally, the MOU noted that all equity would be vested as long as Plaintiff was "operationally participating in the growth and development of PlanetSoft business on a full time basis." *Id.* ¶ 21, Ex. 1. According to the MOU, if participation by Plaintiff was no longer full time, "equity will be bought back prorated on the basis of valuing the company at twice the current revenue." *Id.* ¶ 22, Ex. 1.

The MOU was written on PlanetSoft letterhead. *Id.* Ex. 1. The MOU was signed by Defendant Bajaj and by Plaintiff. *Id.* The signed MOU was faxed to Plaintiff from PlanetSoft's office and lists Bajaj's PlanetSoft email address. *Id.* Plaintiff and Bajaj never signed a final written contract incorporating the terms of the MOU, despite promises by Bajaj that it would be done. *Id.* ¶ 27. Plaintiff paid the $25,000.00 initial investment to PlanetSoft. *Id.* ¶ 16. Plaintiff's spouse, Marceline Utterkar, worked full-time at PlanetSoft from June 1999 until about February 2004. *Id.*

2

Case No.: 14-CV-02250-LHK
ORDER GRANTING MOTIONS TO DISMISS

¶ 17. Plaintiff worked full-time at PlanetSoft from September 2000 until about July 2001, at which point he ceased working at PlanetSoft due to 66 percent wage cuts. *Id.* ¶¶ 15, 18.

Plaintiff alleges that he "requested payment numerous times from 2004 until 2012, and intended to bring suit but refrained from doing so based on assertions" by Defendant Bajaj and "settlement discussions" that took place during that period. *Id.* ¶ 44. In 2008, Defendant Bajaj and the former attorney for PlanetSoft, Shivbir Grewal, "discussed a formal settlement/mutual release" with Plaintiff that "would have paid [Plaintiff] for his equity and reimbursed [Plaintiff and his spouse] for expenses." *Id.* ¶ 45. While the agreement was drafted, it was never executed because Defendant Bajaj "ceased communications" in "late 2008." *Id*. In July of 2012, Defendant Bajaj and Grewal allegedly contacted Plaintiff regarding the settlement and mutual release. *Id.* ¶ 46. According to Plaintiff, the agreement was fully drafted but not executed. *Id.* "The last communication [Plaintiff] received from [Defendant Bajaj] was an email stating that he would contact Mr. Grewal" regarding Plaintiff's proposed changes to the agreement. *Id.*

Plaintiff alleges that around June of 2012, Ebix purchased all of PlanetSoft's stock for approximately $40 million dollars. *Id*. ¶ 30, Ex. 2. Plaintiff alleges that Ebix "reportedly acquired all of the outstanding capital stock and assets of Planetsoft for cash and shares of the common stock of [Ebix]." *Id*. ¶ 31. The deal also "reportedly involved earn-out cash payments to PlanetSoft shareholders based on specific revenue numbers achieved" within two years. *Id.* ¶ 32. Following the sale, Plaintiff contacted Ebix and Bajaj multiple times through counsel requesting compensation for Plaintiff's 5 percent interest in PlanetSoft. *Id*. ¶¶ 35–36, Ex. 3. Plaintiff has not received any compensation for his 5 percent interest in PlanetSoft. *Id.* ¶ 34.

Plaintiff resides in Santa Clara County, California. *Id.* ¶ 1. Ebix is a Delaware corporation headquartered in Atlanta, Georgia, and does business in California. *Id.* ¶ 2. Bajaj has residences in India, Florida, and Georgia, and was formerly the President of PlanetSoft, Inc., a former Delaware corporation that was "licensed to do business in California." *Id.* ¶ 3.

3
Case No.: 14-CV-02250-LHK
ORDER GRANTING MOTIONS TO DISMISS

## B. Procedural Background

Plaintiff filed his original complaint on May 15, 2014. ECF No. 1. Defendant Ebix filed motions to dismiss and to transfer on July 31, 2014. ECF Nos. 15, 16. Plaintiff filed timely oppositions, ECF Nos. 18, 19, and Ebix filed timely replies, ECF Nos. 20, 21. On October 6, 2014, the Court granted Ebix's motion to dismiss Plaintiff's breach of contract claim without prejudice. ("October 6, 2014 Order"), ECF No. 26. In the October 6, 2014 Order, the Court also denied Ebix's motion to dismiss or transfer venue. *Id.*

While Plaintiff served Defendant Ebix on May 30, 2014, Plaintiff was unable to effectuate service on Defendant Bajaj as Plaintiff could not locate Bajaj. *See* ECF No. 52. On December 15, 2014, Plaintiff filed a "Status Report re: Service upon Defendant Sudhir Bajaj." *Id.* Plaintiff represented that on December 6, 2015, a Mr. Navipeta Mahest personally served a security guard at the gated entrance to Bajaj's residence in Secunderabad, India. *Id.* Plaintiff also mailed the documents to the residence and emailed the documents to Bajaj's two last known email addresses on December 15, 2014.

Defendant Ebix filed the instant motion to dismiss on November 18, 2014. ECF No. 44. Plaintiff filed a timely opposition, ECF No. 49, and Ebix filed a timely reply, ECF No. 50.

On December 29, 2014, Defendant Bajaj made a special appearance and filed the instant motion to dismiss for defective service, lack of personal jurisdiction, and failure to state a claim. ECF No. 53. Plaintiff filed his opposition on January 12, 2015, ECF No. 54, and Bajaj filed a timely reply, ECF No. 55.

## II. LEGAL STANDARDS

### A. Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint for failure to state a claim upon which relief can be granted. Such a motion tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). In considering

4

Case No.: 14-CV-02250-LHK
ORDER GRANTING MOTIONS TO DISMISS

1  whether the complaint is sufficient, the Court must accept as true all of the factual allegations
2  contained in the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, the Court need
3  not accept as true "allegations that contradict matters properly subject to judicial notice or by
4  exhibit" or "allegations that are merely conclusory, unwarranted deductions of fact, or
5  unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008)
6  (citation omitted). While a complaint need not allege detailed factual allegations, it "must contain
7  sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"
8  *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim
9  has facial plausibility when the plaintiff pleads factual content that allows the court to draw the
10 reasonable inference that the defendant is liable for the misconduct alleged. The plausibility
11 standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that
12 a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (internal citation omitted).

### B.  Rule 9(b)

Claims sounding in fraud or mistake are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), which require that a plaintiff alleging fraud "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *see Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009). To satisfy the heightened standard under Rule 9(b), the allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). Thus, claims sounding in fraud must allege "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (per curiam) (internal quotation marks and citation omitted). A plaintiff must set forth what is false or misleading about a statement, and why it is false." *In re GlenFed, Inc. Secs. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc), *superseded by statute on other grounds as stated in Marksman*

5

Case No.: 14-CV-02250-LHK
ORDER GRANTING MOTIONS TO DISMISS

*Partners, L.P. v. Chantal Pharm. Corp.*, 927 F. Supp. 1297, 1309 (C.D. Cal. 1996). However, "intent, knowledge, and other conditions of a person's mind" need not be stated with particularity, and "may be alleged generally." Fed. R. Civ. P. 9(b).

### C. Leave to Amend

If the court concludes that the complaint should be dismissed, it must then decide whether to grant leave to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 . . . [is] to facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks and citation omitted). Nonetheless, a district court may deny leave to amend a complaint due to "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *See Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

## III. DISCUSSION

The Court begins by addressing Defendant Ebix's motion to dismiss Plaintiff's sole claim against it: breach of contract. The Court then turns to Defendant Bajaj's motion to dismiss for lack of personal jurisdiction, defective summons and service, and failure to state a claim.

### A. Defendant Ebix

The Court briefly summarizes its previous order granting Defendant Ebix's motion to dismiss before turning to the substance of the instant motion. In the October 6, 2014 Order, the Court dismissed Plaintiff's breach of contract claim with leave to amend. The Court concluded that Plaintiff's breach of contract claim accrued in February 2004 when PlanetSoft failed to perform following the occurrence of a condition precedent. *See* October 6, 2014 Order at 7. The Court noted that the applicable statute of limitations period is four years under California law. *See id.* at 8; Cal. Civ. Code § 337(1). As Plaintiff did not file this action until May 15, 2014, more than

ten years after his claim accrued, the Court concluded that Plaintiff's breach of contract claim was time barred.

The Court granted leave to amend, however, because it was conceivable that Plaintiff could amend his complaint to support an equitable estoppel claim. More specifically, Plaintiff argued in opposition to Ebix's first motion to dismiss that Defendant Bajaj had made promises that Plaintiff's equity would be purchased from Plaintiff. *See* October 6, 2014 Order at 10. The Court concluded that Plaintiff's allegations were insufficient as Plaintiff had failed to plead reasonable reliance or any intent to bring suit prior to when the statute of limitations had run. *Id.* at 11. The Court also concluded that Plaintiff had failed to articulate why Ebix would be equitably estopped from raising a statute of limitations defense based on Bajaj's alleged promises that occurred several years prior to Ebix's alleged acquisition of PlanetSoft. *Id.* The Court cautioned Plaintiff that failure to cure these deficiencies would result in a dismissal with prejudice. *Id.* at 14.

In the instant motion, Defendant Ebix contends that (1) Plaintiff has failed to allege facts supporting an equitable estoppel claim; (2) Ebix cannot be equitably estopped based on Bajaj's conduct; (3) Plaintiff has failed to allege an enforceable contract to which Ebix is a party; and (4) the FAC is defective because Plaintiff has failed to name a necessary party. As the Court concludes that Plaintiff has once again failed to allege facts supporting an equitable estoppel claim, much less an equitable estoppel claim against Ebix, the Court does not address the remainder of Ebix's arguments.

Even if a claim is time barred, "[a] defendant will be estopped to assert the statute of limitations if the defendant's conduct, relied on by the plaintiff, has induced the plaintiff to postpone filing the action until after the statute has run." *Mills v. Forestex Co.*, 108 Cal. App. 4th 625, 652 (Ct. App. 2003); *McMackin v. Ehrheart*, 194 Cal. App. 4th 128, 140 (Ct. App. 2011). However, such promises do not trigger equitable estoppel unless they are "conditioned upon [] refraining from initiating litigation or taking any action against [defendant] and that [the plaintiff does] in reliance thereon forbear from such action." *Abramson v. Brownstein*, 897 F.2d 389, 393

(9th Cir. 1990) (quoting *Kurokawa v. Blum*, 245 Cal. Rptr. 463, 471 (Cal. Ct. App. 1988)). "For a defendant to be equitably estopped from asserting a statute of limitations, the plaintiff must be 'directly prevented . . . from filing [a] suit on time.'" *Vaca v. Wachovia Mortg. Corp.*, 198 Cal. App. 4th 737, 746 (Ct. App. 2011) (quoting *Lantzy v. Centex Homes*, 73 P.3d 517, 534 (Cal. 2003)).

More specifically, under California law, a plaintiff carries the burden of pleading and proving the following elements of equitable estoppel:

> (1) the party to be estopped must be apprised of the facts; (2) that party must intend that his or her conduct be acted on, or must so act that the party asserting the estoppel had a right to believe it was so intended; (3) the party asserting the estoppel must be ignorant of the true state of facts; and (4) the party asserting the estoppel must reasonably rely on the conduct to his or her injury.

*Honig v. San Francisco Planning Dep't*, 127 Cal. App. 4th 520, 529 (Ct. App. 2005).

Here, Plaintiff has once again failed to allege sufficient facts to support an equitable estoppel claim. Plaintiff's cursory allegation that Plaintiff "intended to bring suit but refrained from doing so based on assertions by [Bajaj], and settlement discussions that took place between 2004 and 2012" does not contain sufficient factual matter to support a plausible claim. *See Iqbal*, 556 U.S. at 678. As an initial matter, Plaintiff has failed to "plead with particularity the facts which give rise" to his equitable estoppel claim. *Guerrero v. Gates*, 442 F.3d 697, 706–07 (9th Cir. 2003). Plaintiff does not allege the timing or substance of Bajaj's alleged "assurances." Based on Plaintiff's vague allegations, it is not clear whether any of Bajaj's alleged "assurances" actually occurred prior to the running of the statute of limitations. Moreover, Plaintiff fails to allege any facts showing that Bajaj's assurances "directly prevented" Plaintiff from bringing suit, or otherwise reasonably induced Plaintiff's forbearance. FAC ¶ 44; *Vaca*, 198 Cal. App. 4th at 746. As Ebix notes, Plaintiff does not allege that Bajaj made representations that Plaintiff would receive compensation if Plaintiff refrained from filing suit. To the contrary, Plaintiff offers no hint at all of what representations Bajaj allegedly made to Plaintiff. Consequently, Plaintiff has failed to plead any facts supporting a claim that Plaintiff could have *reasonably* relied on Bajaj's alleged

8

Case No.: 14-CV-02250-LHK
ORDER GRANTING MOTIONS TO DISMISS

representations, or that said representations actually and reasonably induced Plaintiff's decision not to bring suit. *See Abramson*, 897 F.2d at 393; *Honig*, 127 Cal. App. 4th at 529; *see also Estate of Amaro v. City of Oakland*, No. 09-1019, 2010 WL 669240, at *9 (N.D. Cal. Feb. 23, 2010).

Moreover, while Plaintiff alleges that Bajaj and the former attorney for PlanetSoft, Grewal, "discussed a formal settlement/mutual release" with Plaintiff "in or about 2008," it is not clear that this discussion occurred prior to the running of the statute of limitations. FAC ¶ 45. As the Court previously found, the statute of limitations ran on Plaintiff's breach of contract claim in February 2008. *See* October 6, 2014 Order at 8. While it is conceivable that this initial "formal settlement/mutual release" discussion occurred prior to the running of the statute of limitations, the Court notes that Plaintiff further alleges that the resulting agreement "was never executed because [Bajaj] ceased communications . . . in late 2008." FAC ¶ 45. Rather than filing suit at that point, Plaintiff did nothing for another four years, until Bajaj and Grewal allegedly contacted Plaintiff again regarding the settlement in July of 2012. *Id.* ¶ 46. Again, the resulting agreement was never executed, and Plaintiff failed to hear back from Bajaj or Grewal. *Id.* Plaintiff does not explain his failure to pursue this action in the intervening four years after the first settlement discussion, or the two years following the second settlement discussion. The Court concludes that Plaintiff has failed to allege any plausible basis for concluding that Plaintiff could have reasonably "held off suing for" ten years based on two isolated settlement discussions, four years apart, that occurred approximately four years after Plaintiff's claim accrued and two years prior to Plaintiff initiating this lawsuit. *See Abramson*, 897 F.2d at 393.

While Plaintiff alleges that Bajaj's "conduct and assurances, relied on by [Plaintiff], induced [Plaintiff] to postpone filing this action," FAC ¶ 48, the Court finds this conclusory allegation insufficient to support a claim of equitable estoppel. Plaintiff does not plead facts "indicating that [Defendants'] conduct actually and reasonably induced" Plaintiff to forbear filing suit. *Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP*, 133 Cal. App. 4th 658, 686–87 (Ct. App. 2005). Moreover, "the fact that [the defendant] engaged in settlement

9

Case No.: 14-CV-02250-LHK
ORDER GRANTING MOTIONS TO DISMISS

negotiations with [plaintiff] would not suffice to constitute the kind of activity that would permit an equitable estoppel." *Morning Star Packing Co., L.P. v. Crown Cork & Seal Co. (USA), Inc.*, 303 F. App'x 399, 403 (9th Cir. 2008) (citing *Jackson v. Andco Farms, Inc.*, 130 Cal. App. 3d 475 (Ct. App. 1982), and *Kunstman v. Mirizzi*, 234 Cal. App. 2d 753 (Ct. App. 1965)). Furthermore, while Plaintiff argues in his opposition that he did not bring suit because Plaintiff believed that he continued to own a 5 percent stake in PlanetSoft, Plaintiff does not plead facts showing that his subjective belief was actually and reasonably induced by Bajaj or Ebix. That Plaintiff independently concluded that he would continue to own equity in PlanetSoft despite Plaintiff's knowledge in 2004 that PlanetSoft had breached the MOU only undermines Plaintiff's equitable estoppel claim, as Plaintiff has failed to sufficiently allege that it is *Defendants' conduct* that induced this erroneous belief.

In opposition, Plaintiff cites *Battuello v. Battuello*, 64 Cal. App. 4th 842, 848 (Ct. App. 1998). However, *Battuello* illustrates the insufficiency of Plaintiff's allegations. In *Battuello*, the defendant "convinced [the plaintiff] not to file a timely suit by *telling* [the plaintiff] that [plaintiff] would receive the vineyard." *Id.* (emphasis added). The *Battuello* court then cited *Katz v. A.J. Ruhlman & Co.*, 159 P.2d 426 (Cal. 1945), where an administrator was equitably estopped from raising a statute of limitations defense where the administrator "told the defendant it need not file a formal claim." 64 Cal App. 4th at 848. Here, Plaintiff's allegations are distinguishable in two respects. First, Plaintiff has failed to allege with any specificity what Bajaj represented to him. Second, and relatedly, Plaintiff has failed to allege that Bajaj or Ebix actually made misrepresentations regarding the necessity of bringing a timely suit. *See Lantzy*, 73 P.3d at 534. The Court therefore concludes that Plaintiff has failed to plead plausible claims for relief.

The Court previously granted Plaintiff leave to amend with instructions as to the specific factual allegations Plaintiff would need to make in order to allege a claim for equitable estoppel. The Court finds that Plaintiff has failed to do so, despite being warned that failure to cure the deficiencies identified in the Court's October 6, 2014 Order would result in a dismissal with

10
Case No.: 14-CV-02250-LHK
ORDER GRANTING MOTIONS TO DISMISS

1 prejudice. Moreover, based on Plaintiff's amended allegations, the Court concludes that
2 amendment would be futile. *See Leadsinger*, 512 F.3d at 532. The Court therefore dismisses with
3 prejudice Plaintiff's breach of contract claim.

**B. Defendant Bajaj**

Defendant Bajaj specially appears before this Court and moves to dismiss Plaintiff's sole claim against Bajaj, fraud, for lack of personal jurisdiction, defective service, and failure to state a claim.

**1. Defective Service**

Defendant Bajaj contends that Plaintiff has failed to properly effect service. A motion to dismiss for defective service may be brought under Federal Rule of Civil Procedure 12(b)(4) and 12(b)(5). A defendant may challenge the form of summons under Rule 12(b)(4) and method of service under Rule 12(b)(5). Here, Bajaj challenges Plaintiff's method of service.

The Court begins by describing Plaintiff's attempts to serve Bajaj over the last 10 months. In Plaintiff's September 5, 2014 case management statement, Plaintiff noted that it had served Ebix on May 30, 2014, and had been unable to locate Bajaj thus far but had "information that Mr. BAJAJ resides in India." ECF No. 23. Plaintiff "expected to serve" Bajaj in September or October of 2014. Plaintiff filed four proposed summons for Bajaj between October 10, 2014 and November 13, 2014. ECF Nos. 30, 32, 35, 41. In Plaintiff's and Ebix's November 18, 2014 joint case management statement, Plaintiff again represented that Bajaj had not yet been served or located, but that Plaintiff continued to believe Bajaj resided in India. ECF No. 45. The parties proposed December 31, 2014 as the deadline for service of Bajaj. *Id.* at 2.

On December 15, 2014, Plaintiff filed a proof of service for Bajaj, indicating that Navipeta Mahesh had left the summons with "Mr. Basanta - Security Guard at gated entrance to residence" on December 6, 2014, in Secunderabad, India. ECF No. 51. Plaintiff then filed a "Status Report" regarding service on Bajaj and represented that after "unsuccessful attempts to serve . . . Bajaj in Naples, Florida and Atlanta, Georgia," Plaintiff had served Bajaj in Secunderabad, India. ECF No.

1   52. Plaintiff stated that the process server, Mahesh, had "personally handed" the relevant
2   documents to a security guard, Basanta, at the gated entrance to Bajaj's residence in
3   Secunderabad. "Basanta stated that he would give the documents to" Bajaj, and Basanta confirmed
4   on December 13, 2014, that he had given the documents to Bajaj. *Id.* Plaintiff also mailed the
5   documents to the Secunderabad address and emailed the documents to Bajaj's two last known
6   email addresses on December 15, 2014. *Id.*

7   Rule 4(f) provides several means by which a plaintiff may serve an individual "at a place
8   not within any judicial district of the United States." Pursuant to Rule 4(f)(1), an individual may
9   be served in a foreign country "by an internationally agreed means of service that is reasonably
10  calculated to give notice, such as those authorized by the Hague Convention on the Service
11  Abroad of Judicial and Extrajudicial Documents." Rule 4(f)(3) further provides for service "by
12  any other means not prohibited by international agreement, as the court orders." Fed. R. Civ. P.
13  4(f)(3).

14  In this case, Plaintiff alleges he served Bajaj in India, which is a signatory to the Hague
15  Convention referenced in Rule 4(f)(1). The Hague Convention requires signatory countries to
16  establish a Central Authority to receive requests for service of documents from other countries and
17  to serve those documents by methods compatible with the internal laws of the receiving state. *See*
18  *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 698–99 (1988). Service through a
19  country's Central Authority is the principal means of service under the Hague Convention. Article
20  10 of the Convention also permits other forms of service, such as service "by postal channels" or
21  through judicial officers, provided that the state of destination does not object.[1] *See* Convention on

---

[1] Article 10 reads: "Provided the State of destination does not object, the present Convention shall not interfere with - (a) the freedom to send judicial documents, by postal channels, directly to persons abroad, (b) the freedom of judicial officers, officials or other competent persons of the State of origin to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination, (c) the freedom of any person interested in a judicial proceeding to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination." Hague Convention, 20 U.S.T. 361, T.I.A.S. No. 6638, Art. 10.

Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters, Nov. 15, 1965 ("Hague Convention"), [1969] 20 U.S.T. 361, T.I.A.S. No. 6638, 1969 WL 97765, Art. 10. However, because India has objected to Article 10, service by mail or through judicial officers is not available.

Here, Plaintiff concedes that he did not comply with either the Hague Convention or Indian law in attempting to serve Bajaj. Plaintiff's use of a private process server did not comport with Indian law, as India does not allow the use of private process servers. *See Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1296 (Fed. Cir. 2012). Moreover, Plaintiff concedes that he did not use or attempt to use the Central Authority of India to serve Bajaj, in accordance with the Hague Convention. While Plaintiff now states that he believes it would take six to nine months for the Central Authority to serve Bajaj, the Court notes that Plaintiff first identified Bajaj as residing in India in Plaintiff's September 5, 2014 case management statement. *See* ECF No. 23. Plaintiff has therefore known of Bajaj's alleged Indian address since at least September 5, 2014. Had Plaintiff taken the appropriate steps to serve Bajaj through the Central Authority of India at that time, Bajaj may well have been served by this point. The Court therefore finds unpersuasive Plaintiff's complaint that service through the Central Authority would have taken too long.

Moreover, Plaintiff contends that the Court should retroactively allow Plaintiff's service of Bajaj by email as an alternative, acceptable means under Rule 4(f)(3). Plaintiff states that he emailed copies of the relevant documents to Bajaj's two last known email addresses. However, as Plaintiff did not serve Bajaj via email pursuant to court order, Plaintiff's alternative service is insufficient. *See Brockmeyer*, 383 F.3d at 806 (service ineffective because plaintiff failed to obtain court approval *prior* to serving via mail). The Court therefore concludes that Plaintiff has failed to effectively serve Bajaj. As Plaintiff's prior service was ineffective, the Court dismisses Plaintiff's sole claim against Bajaj.

Bajaj requests that the Court dismiss Plaintiff's claim with prejudice in light of Plaintiff's record of delay and erroneous statement to the Court that Plaintiff had properly served Bajaj.

However, the Court concludes that this case does not pose the "extreme situation [] where there is a clear record of delay or contumacious conduct by the plaintiff." *Gaspard v. United States*, 713 F.2d 1097, 1105–06 n.20 (5th Cir. 1983). Plaintiff, though he failed to comply with the Hague Convention and Rule 4(f), appears to have made legitimate efforts to serve Bajaj. The Court therefore dismisses Plaintiff's claim without prejudice.

### 2. Personal Jurisdiction

In the interest of judicial economy, the Court also briefly addresses Bajaj's arguments with regards to personal jurisdiction. Should Plaintiff elect to attempt to re-serve Bajaj, the Court expects Plaintiff to address the Court's concerns with regards to personal jurisdiction.

First, the Court notes that even if Plaintiff had properly serve Defendant Bajaj, Plaintiff has failed to make a prima facie showing of necessary jurisdictional facts.

When a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). Where, as here, the defendant's motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand a motion to dismiss for lack of personal jurisdiction. *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011) (citing *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1127 (9th Cir. 2010)). At this stage of the proceeding, "uncontroverted allegations in plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in plaintiff's favor." *Brayton Purcell*, 606 F.3d at 1127 (internal quotation marks, citations, and alterations omitted). In addition, "[t]he court may consider evidence presented in affidavits to assist it in its determination and may order discovery on the jurisdictional issues." *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001).

When there is no applicable federal statute governing personal jurisdiction, as is the case here, the law of the forum state determines personal jurisdiction. *Schwarzenegger*, 374 F.3d at

14

Case No.: 14-CV-02250-LHK
ORDER GRANTING MOTIONS TO DISMISS

800. California's long arm statute, which determines personal jurisdiction, is coextensive with federal due process requirements, and therefore the analysis for personal jurisdiction is the same under both state and federal law. *Id.* at 800–01; Cal. Code Civ. Pro. § 410.10. A court may exercise personal jurisdiction over a non-resident defendant only when the defendant has "'minimum contacts'" with the forum state such that jurisdiction "'does not offend traditional notions of fair play and substantial justice.'" *Schwarzenegger*, 374 F.3d at 801 (quoting *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945)). This "minimum contacts" requirement can be satisfied either by establishing general jurisdiction or specific jurisdiction. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984).

Here Plaintiff contends that the Court may exercise general jurisdiction over Bajaj. For the first time in Plaintiff's opposition to Defendant Bajaj's motion, Plaintiff now asserts that Bajaj "personally owned property and lived in California at times relevant to this litigation until approximately 2012." ECF No. 54 at 14–15. As Bajaj notes, however, Plaintiff has failed to make any such allegations in his FAC, and has not submitted any affidavits making this allegation. As such, the Court finds that even if Plaintiff had properly served Bajaj, Plaintiff has failed to allege facts showing that the Court may exercise general jurisdiction over Bajaj.

Plaintiff does not explain or otherwise argue why the Court may exercise specific jurisdiction. For specific personal jurisdiction, the Ninth Circuit has adopted a three-part test that requires the plaintiff to show: (1) the defendant purposefully directed its activities at residents of the forum or purposefully availed itself of the privilege of doing business in the forum; (2) that the plaintiff's claim arises out of or relates to those activities; and (3) that the assertion of personal jurisdiction is reasonable and fair. *Schwarzenegger*, 374 F.3d at 802. It is the plaintiff's burden to plead allegations satisfying the first two prongs. *Id.* If the plaintiff does so, the burden then shifts to the defendant to show why the exercise of personal jurisdiction would not be reasonable and fair. *Id.*

Here, Plaintiff's cursory argument that Bajaj, as an employee of a corporation that once did

15

Case No.: 14-CV-02250-LHK
ORDER GRANTING MOTIONS TO DISMISS

business in California, is subject to the Court's specific jurisdiction is insufficient. *See, e.g.*, *Winery v. Graham*, No. 06-3618, 2007 WL 963252, at *5 (N.D. Cal. Mar. 29, 2007) ("The mere fact that a corporation is subject to local jurisdiction does not necessarily mean its nonresident officers, directors, agents, and employees are suable locally as well.") (internal quotation marks omitted); *see also Allstar Mrkt'g Grp., LLC v. Your Store Online, LLC*, 666 F. Supp. 2d 1109, 1119–20 (C.D. Cal. 2009) (citing *Davis v. Metro Prods., Inc.*, 885 F.2d 515, 520 (9th Cir. 1989)). Plaintiff alleges nothing more than that PlanetSoft was once licensed to do business in California. Plaintiff has not alleged any facts demonstrating Bajaj's contacts with the state of California, rather than PlanetSoft's contacts. Even if PlanetSoft's contacts with California were ascribed to Bajaj, the Court agrees with Bajaj that Plaintiff has failed to allege any nexus between PlanetSoft's license to do business in California and the breach of an MOU that described Plaintiff's responsibilities in New York and New Jersey, while Bajaj resided in Massachusetts, or Bajaj's alleged fraudulent statements made in connection with the MOU. *See* FAC, Exh. 1.

The Court therefore concludes that even assuming Plaintiff had effectively served Bajaj, Plaintiff has failed to sufficiently allege facts showing that this Court's exercise of personal jurisdiction over Bajaj would be appropriate. The Court grants leave to amend because dismissals for lack of personal jurisdiction should generally be without prejudice. *Fiorani v. Berenzweig*, 441 F. App'x 540, 541 (9th Cir. 2011) (citing *Grigsby v. CMI Corp.*, 765 F.2d 1369, 1372 n.5 (9th Cir. 1985) (noting that district court erred in dismissing with prejudice for lack of personal jurisdiction)).

## IV. CONCLUSION

For the reasons stated above, the Court dismisses with prejudice Plaintiff's breach of contract claim against Defendant Ebix. The Court dismisses without prejudice Plaintiff's fraud claim against Defendant Bajaj for defective service. Should Plaintiff seek leave of Court to file a Second Amended Complaint, it shall do so within 14 days of this Order. Failure to cure the deficiencies identified in this Order will result in a dismissal with prejudice of Plaintiff's fraud

16
Case No.: 14-CV-02250-LHK
ORDER GRANTING MOTIONS TO DISMISS

claim against Defendant Bajaj.

Plaintiff shall file a status update by March 25, 2015, indicating how Plaintiff intends to proceed.

**IT IS SO ORDERED.**

Dated: March 18, 2015

_____
LUCY H. KOH
United States District Judge